IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **MICHAEL JOSEPH CARR,** § <br> **(BOP No 49542-177),** § <br>     Plaintiff, § <br> V. § <br> § <br> **BOP OFFICE OF** § <br> **GENERAL COUNSEL, et al.,** § <br> § <br>     Defendants § | Civil Action No. 4:23-cv-447-O |

## OPINION and ORDER

This case was filed by Bureau of Prisons ("BOP") inmate/Plaintiff Michael Joseph Carr ("Carr") asserting claims against former FMC-Fort Worth Warden F.J. Garrido, BOP Regional Director H. Tellez, and the BOP Office of General Counsel. Am. Compl. 3, ECF No. 6. By Opinion and Order issued on December 13, 2023, the Court dismissed Carr's claims against the BOP, the BOP Office of General Counsel, and claims under 42 U.S.C. § 1985(3), under authority of 28 U.S.C. § 1915A(b)(1). ECF No. 13. The Court allowed Carr to serve his remaining claims. Now pending is a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) by remaining defendants Garrido and Tellez. ECF No. 22. Carr has not filed a response to the motion. After considering the relief sought by Carr, the pleading, record, briefing and applicable law, the Court finds that the motion to dismiss must be **GRANTED**.

### I.     BACKGROUND/CLAIMS

Michael Carr is an inmate in the custody of the BOP. Am. Compl. 4, ECF No. 6. In 2015, Carr pleaded guilty to Enticement of a Minor and was sentenced to a 210-month term of imprisonment followed by 10 years of supervised release. *Se*e Judgment, *United States v. Carr*, No. 3:15-cr-00276-B (1) (N.D. Tex., Apr. 21, 2016), ECF No. 43.

As noted, Carr has remaining claims against F. J. Garrido—retired former Warden of Federal Medical Center (FMC) Fort Worth—and Heriberto H. Tellez—Regional Director for the South Central Region of the BOP—individually for allegedly violating his Fifth Amendment right to due process. Am. Compl. 1-6, ECF No. 6. Carr particularly claims his Fifth Amendment due process rights were violated by FMC-Fort Worth continuously losing or delaying delivery of mail related to his requests for administrative remedies. *Id.* at 1-6. He alleges delays in processing the grievances required by the administrative remedy process.[1] Am. Compl. (Exhibits) at 14, 19, 21-22, ECF No. 6. Specifically, Carr complains that mail containing responses to various administrative complaints was not given to him until after his deadline to appeal. *Id.* According to Carr, Garrido and Tellez have direct oversight over the administrative remedy program at various levels. *Id.* at 4, § V. Carr alleges Defendants are responsible through their "direct oversight over Administrative Remedies at various local, re[g]ional, and central levels." *Id.* at § V. Carr does not otherwise allege any specific action taken by either Garrido or Tellez.

Carr seeks a permanent injunction against the defendants, enjoining them from taking part in "any further deceptive conduct with regards to dating and delivering Rejections and Responses to Administrative complaints." *Id.* at 4 § VI. Carr does not request any other form of relief.

## II.   MOTION TO DISMISS

### A.   Overview

---

[3]Defendants note that Carr did not properly exhaust his administrative remedies for these complaints prior to filing suit, but they also acknowledge lack of exhaustion is an affirmative defense that must be raised in a motion for summary judgment rather than a Rule 12(b) motion. Mot. Dismiss, 9, ECF No. 22. Thus, lack of exhaustion is not a basis for resolution of the pending Rule 12(b)(6) motion.

Defendants contend that Carr's Amended Complaint fails to state a claim upon which relief can be granted. They argue that no implied cause of action exists or should be created under *Bivens*[2] to remedy the types of constitutional violations asserted in Carr's amended complaint. Also, defendants argue that injunctive relief is unavailable to *Bivens* claimants. Finally, defendants argue they are entitled to qualified immunity for their alleged actions.

**B.     Rule 12(b)(6) Standard**

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is generally viewed with disfavor. *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir.1997). The court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Bustos v. Martini Club Inc*, 599 F.3d 458, 461 (5th Cir. 2010) (citing *True v. Robles*, 571 F.3d 412, 417 (5th Cir. 2009)). Rule 12 must be interpreted in conjunction with Rule 8(a), which sets forth the requirements for pleading a claim for relief in federal court and calls for "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court cannot look beyond the face of the pleadings in resolving a Rule 12(b)(6) motion. *Doe ex rel. Magee v. Covington Cnty, Sch. Dist.*, 649 F.3d 335, 341 (5th Cir. 2011) (explaining that "[w]e examine only the allegations within the four corners of the complaint"), *aff'd on rehearing en banc*, 675 F.3d 849 (5th Cir. 2012). A plaintiff, however, must plead specific facts, not mere conclusory allegations, to avoid dismissal. *See Schultea v. Wood*, 47 F.3d 1427, 1431 (5th Cir. 1995) (en banc); *see also Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) ("[C]onclusory allegations or legal conclusions

---

[2]*Bivens v. v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

3

Case 4:23-cv-00447-O   Document 24   Filed 06/17/24   Page 4 of 11   PageID 203

masquerading as factual conclusions will not suffice to prevent a motion to dismiss") (citation omitted)). Rule of Civil Procedure 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

As the United States Supreme Court explained in *Bell Atlantic Corp. v. Twombly,* the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face" and his "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. 544, 555 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), to the extent the Court concluded therein that a plaintiff can survive a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief"). Then, in *Ashcroft v. Iqbal,* the Supreme Court clarified that review of a 12(b)(6) motion is guided by two principles: (1) a court must apply the presumption of truthfulness only to factual matters and not to legal conclusions; and (2) only a complaint that states a plausible claim for relief survives a motion to dismiss. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. 662, 678-680 (2009). If the pleadings fail to meet the requirements of *Iqbal* and *Twombly* no viable claim is stated, and the pleading is subject to dismissal.

    **C.**    **Analysis – Whether *Bivens* Extends to Carr's Constitutional Claim**
          1.    <u>Introduction</u>

In *Bivens*, the United States Supreme Court for the first time "recognized 'an implied private action for damages against federal officers alleged to have violated a citizen's

4

constitutional rights,'" specifically, under the Fourth Amendment. *Butts v. Martin*, 877 F.3d 571, 587 (5th Cir. 2017) (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001). In subsequent decisions the Supreme Court decided only two other cases in which it recognized an implied cause of action outside of the Fourth Amendment context: *Davis v. Passman*, 442 U.S. 228 (1979) (holding the "Fifth Amendment Due Process Clause gave [the petitioner] a damages remedy for gender discrimination") and *Carlson v. Green*, 446 U.S. 14 (1980) (holding that the "Eighth Amendment Cruel and Unusual Punishments Clause gave [a prisoner's estate] a damages remedy for failure to provide adequate medical treatment"). *See Ziglar v. Abbasi*, 582 U.S. 120, 130-31 (2017). In *Abbasi*, the Supreme Court noted that those "three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Id.* at 131. And the Court explained it had "notabl[y] change[d] . . . [its] approach to recognizing implied causes of action . . . ma[king] clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Id.* at 135 (citing *Iqbal*, 556 U.S. at 675).

In order to determine whether a *Bivens* remedy is available to Carr on his constitutional claim against Garrido and Tellez, this Court "must first assess whether [his] claim[s] present a new *Bivens* context." *Butts*, 877 F.3d at 587 (citing *Iqbal*, 556 U.S. at 675). "If so, there are two circumstances where *Bivens* does not recognize an implied cause of action for constitutional violations. First, *Bivens* claims are unavailable 'if there are special factors counseling hesitation in the absence of affirmative action by Congress.'" *Butts*, 877 F.3d at 587 (quoting *Abbasi*, 582 U.S. at 136) (internal citation omitted). "Second, *Bivens* remedies may be foreclosed by congressional action where an 'alternative, existing process for protecting the interest amounts to

5

a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.'" *Butts*, 877 F.3d at 587 (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)).

2. <u>Whether Carr's Claims Present a New *Bivens* Context</u>

In *Abassi*, after discussing the only three cases where the Supreme Court had previously approved of an implied damages remedy—*Bivens*, *Davis*, and *Carlson*—the Court explained "[i]f the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court, then the context is new" and courts should be cautious of recognizing any implied *Bivens* remedy. *Abbasi*, 582 U.S. at 139-40.

Carr's claims are distinguishable from these three cases, and thus present a new *Bivens* context. Indeed, *Davis* is the only one of the three cases identified in *Abbasi* that addresses the Fifth Amendment, but Carr's claims of denial of due process related to BOP grievance procedures are not analogous to the employment-based equal-protection claims in *Davis*. *See Cantu v. Moody*, 933 F.3d 414, 422 (5th Cir. 2019) ("No one thinks *Davis*—which permitted a congressional employee to sue for unlawful termination in violation of the Due Process Clause—means the entirety of the Fifth Amendment's Due Process Clause is fair game in a *Bivens* action."). Significantly, the Supreme Court has never recognized a *Bivens* remedy for a Fifth Amendment due-process violation. *See Annappareddy v. Pascale*, 996 F.3d 120, 134 (4th Cir. 2021) (finding that the plaintiff's "fabrication . . . of evidence claims" are "far afield from the sex discrimination" claims in *Davis*) (internal quotation marks omitted). Accordingly, Carr's purported *Bivens* claims regarding the timing of receipt of grievance response mail while incarcerated arise in new context.

3. <u>Special Factors Counsel Against a new *Bivens* remedy</u>.

When a purported *Bivens* claim is asserted in a new context, *Abbasi* requires consideration of whether "special factors" counsel against inferring such a cause of action in the absence of "affirmative action by Congress." *Abbasi*, 582 U.S. at 136. As the Supreme Court clarified in *Abbasi*, this "inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 136. A *Bivens* remedy should not be inferred if "there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong." *Id.* at 137. Relatedly, "if there is an alternative remedial structure present in a certain case," the existence of that process "alone may limit the power of the Judiciary to infer a new *Bivens* cause of action.*" Id.*

Applying these principles, Carr cannot show that a *Bivens* claim should be recognized here. Congress has crafted distinct, alternative methods to address an inmate's complaints about the conditions of his confinement. Specifically, Carr has available to him the administrative remedy program. The program is provided through regulations, codified at 28 C.F.R. §§ 542.10 through 542.19, Promulgated pursuant to an explicit congressional delegation of authority, which "allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). As one court of appeals noted, a damages remedy is not necessary as "'alternative remedial structures' can take many forms, including administrative, statutory, equitable, and state law remedies." *Vega v. United States*, 881 F.3d 1146, 1154 (9th Cir. 2018) (finding the administrative remedy program outlined by 28 C.F.R. §§ 542.10 through 542.19 to constitute an alternative remedial structure under *Abassi*). Indeed, Carr has taken advantage of this process. Am. Compl. (Exhibits) 14-42, ECF No. 6.

And even if there were no alternative process available to Carr, other special factors counsel hesitation before creating the new kind of *Bivens* litigation sought here. First, through frequent and intense action in regulating federal prisons and prisoner litigation, Congress has demonstrated an intent to limit prisoner suits and has never allowed a damages remedy, let alone for claims like those asserted by Carr. *See, e.g.* Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. The Fifth Circuit has also recognized that "the length of time Congress has gone without statutorily creating a *Bivens*-type remedy" in a specific context is a special factor counseling hesitation against recognizing a new *Bivens* action. *Cantu*, 933 F.3d at 423. As the Supreme Court has not recognized a new *Bivens* cause of action for more than five decades, "Congress has long been on notice that the Supreme Court is disinclined to extend *Bivens* to new contexts," suggesting that Congress's silence is the result of "'more than mere oversight.'" *Id.* at 423-44 (quoting *Abbasi*, 582 U.S. at 143.) This is particularly true in the federal prison setting, where "Congressional interest has been 'frequent and intense.'" *Abassi*, 582 U.S. at 144 (citing *Schweiker v. Chilicky*, 487 U.S. 412, 423 (1988)). Despite decades of repeated and extensive congressional action in federal prison operations and litigation, Congress never enacted a statute entitling federal prisoners to a civil damages action, and "when Congress fails to provide a damages remedy in circumstances like these, it is much more difficult to believe that 'congressional inaction' was 'inadvertent.'" *Id.* at 144.

Second, separation-of-powers principles counsel against judiciary interference in federal prison operations when Congress has delegated the authority to ensure safety and order in those prisons to the Executive (through the BOP). *See* 18 U.S.C. § 3621(b)(1-5) (noting BOP, in designating place of prisoner's confinement, may choose "any available penal . . . facility that meets minimum standards . . . established by [BOP] . . . that [BOP] determines to be appropriate

8

and suitable" in light of five enumerated factors); *see also* 18 U.S.C. § 4001(b)(1) and (2) (delegating "control and management" of federal prisons to Attorney General, who may classify inmates and promulgate rules and regulations that "provide for their proper government, discipline, treatment, care, rehabilitation, and reformation"); *and* 18 U.S.C. § 4042(a)(1) and (2) (providing BOP, under direction of Attorney General, "shall…have charge of the management and regulation of all Federal penal and correctional institutions" and directing BOP to "provide for the protection… and discipline of all persons charged with or convicted of offenses against the United States"). Not only has Congress delegated much of its authority over federal prisons to the BOP, but, in some instances, it has "expressly strip[ped]… court[s] of jurisdiction to review certain decisions made by BOP officials." *Brown v. Holder*, 770 F. Supp. 2d 363, 365 (D. D.C. 2011) (citing 18 U.S.C. § 3625). Separation-of-powers principles inherent in Congress' delegation of running federal prisons to the Attorney General and BOP causes the Court to hesitate before establishing a new *Bivens* damages remedy.

Finally, practical considerations—such as the harmful effects on the discharge of prison officials' day-to-day duties and systemwide costs on the government—weigh against courts attempting to create a workable cause of action. "When determining whether traditional equitable powers suffice to give necessary constitutional protection—or whether, in addition, a damages remedy is necessary—there are a number of economic and governmental concerns to consider." *Abbasi*, 582 U.S. at 133-34. The sheer volume of the sorts of complaints that could be brought in this kind of lawsuit create an unusual "burden and demand" that "might well prevent" prison officials who fear suit "from devoting the time and effort required for the proper discharge of their duties." *Abbasi*, 582 U.S. at 141.

In sum, for Carr's claims, a "general *Bivens* cure would be worse than the disease."

9

*Wilkie v. Robins*, 551 U.S. 537, 561 (2007). "Recognizing any new *Bivens* action 'entail[s] substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.'" *Egbert v. Boule*, 596 U.S. 482, 142 S. Ct.1793, 1807 (2022) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). As a result, the Supreme Court has determined that "[w]hen asked to imply a *Bivens* action, our watchword is caution." *Id*. at 1803 (cleaned up). Here, Carr's claims represent a new context, and special factors counsel against expanding *Bivens* to include them. As a result, his *Bivens* claims against defendants must be dismissed.

### D. Analysis-Carr Fails to state a claim under *Bivens* for injunctive relief.

Injunctive relief is not available in a *Bivens* lawsuit against a defendant sued in their individual capacity. *See Rivers v. Carvajal*, No. 2:20-CV-1364, 2022 WL 3082556 (W.D. La. Jun. 28, 2022) (citing *Solida v. McKelvey*, 820 F.3d 1090, 1094 (9th Cir. 2016) ("By definition *Bivens* suits are individual capacity suits and thus cannot enjoin official government action."); *see also Higazy v. Templeton*, 505 F.3d 161, 169 (2nd Cir. 2007) ("The only remedy available in a *Bivens* action is an award for monetary damages from defendants in their individual capacities") (citation omitted). As explained in *Bivens* itself, "the only possible remedy . . . is damages or nothing":

> [S]ome form of damages is the only possible remedy for someone in *Bivens*' alleged position. It will be a rare case indeed in which an individual in *Bivens*' position will be able to obviate the harm by securing injunctive relief from any court. However desirable a direct remedy against the Government might be as a substitute for individual official liability, the sovereign still remains immune to suit.... For people in *Bivens*' shoes, *it is damages or nothing*.

*Bivens*, 403 U.S. at 409-10 (Harlan, concurring) (emphasis added). As such, Carr's request for injunctive relief is improperly brought against the defendants in their individual capacities, and

10

such claims must be dismissed.

### E. Alternative Analysis-Defendants Entitled to Qualified Immunity

Alternatively, defendants Garrido and Tellez are entitled to qualified immunity from all of Carr's claims against them for the reasons set forth in the Defendants' motion to dismiss at section III (B) at pages 18 through 23. As explained there in detail, Carr cannot show that Garrido or Tellez violated a statutory or constitutional rights that was clearly established. As such, Defendants Garrido and Tellez are alternatively entitled to qualified immunity from all claims against them.

## IV. CONCLUSION AND ORDER

It is therefore **ORDERED** that Defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) (ECF No. 22) is **GRANTED**, such that all plaintiff Michael Joseph Carr's remaining claims are **DISMISSED** with prejudice.

**SO ORDERED** on this **17th day** of **June, 2024.**

_____
Reed O'Connor
UNITED STATES DISTRICT JUDGE